Re: Atlas Data Privacy Corp. v. We Inform, LLC et al., Consol. Dkt. No. 25-1555

**Plaintiffs-Appellees' Supplemental Brief**

The New Jersey Supreme Court's ruling that *N.J.S.A.* 56:8-166.1(c)(1) ("166.1(c)(1)") does not require proof of a mental state to award actual or liquidated damages does nothing to strengthen Defendants' facial challenge. Defendants have failed to satisfy their burden under *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), having identified three hypothetical cases at most—all freak computer failures and natural disasters—in which it is supposedly unconstitutional for a court to award damages under 166.1(c)(1). And even in those hypotheticals, Defendants fail to show the statute is unconstitutional or even visits a cognizable injury on them.

## I. Defendants Failed to Show that Daniel's Law is Facially Unconstitutional.

Defendants have the burden to show that 166.1(c)(1)'s "unconstitutional applications substantially outweigh its constitutional ones," but Defendants' challenge fails at each step of the inquiry prescribed by *Moody*. 603 U.S. at 723–24. **First**, Defendants failed to "develop a record that would allow the court to 'determine [the] law's full set of applications.'" *NetChoice v. Bonta*, 152 F.4th 1002, 1021 (9th Cir. 2025) (quoting *Moody*, 603 U.S. at 718). Defendants raised their facial challenge on a motion to dismiss, where courts must "accept[] all factual allegations in the complaint as true." *Plastic Surg. Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 229 (3d Cir. 2020) (citation omitted). That "strategic decision 'comes at a cost'": "[n]either parties nor courts can disregard the requisite inquiry into how a law works in all of its applications." *NetChoice v. Bonta*, 170 F.4th 744, 758, 761 (9th Cir. 2026) (quoting *Moody* at 744). But the complaints here provide no basis for Defendants' extra-record speculation regarding possible applications of Daniel's Law.

The allegations in the complaints provide no support for Defendants' challenge. *See In re Georgia Senate Bill 202*, 160 F.4th 1171, 1175, 1177 (11th Cir. 2025) (rejecting facial challenge premised exclusively on complaint's allegation); *Woodlands Pride v. Paxton*, 168 F.4th 293, 308 (5th Cir. 2026) (challenger failed to "adequately develop the record"). The violations alleged were committed by data brokers with sophisticated data-management protocols and technology, that are subject to multiple overlapping privacy regimes with similar opt-out requirements and compliance periods. *See* Proposed Brief of *Amicus Curiae* Abine, Inc., Doc. 111 at 2–3. And as the district court ruled, the complaints successfully "allege recklessness"[1] by alleging that each Defendant refused "to comply with Daniel's

---

[1] This conclusion has jurisdictional significance. Defendants cannot establish standing to challenge statutory provisions that did not cause their asserted injuries by hypothesizing application to those whose conduct was inadvertent or non-reckless. *See Serv. Emps. Int'l Union, Loc. 3 v. Municipality of Mt. Lebanon*, 446 F.3d 419, 424–25 (3d Cir. 2006) (standing to challenge one ordinance

Law" for "extended periods" after receiving valid notifications. *Atlas Data Privacy Corp. v. We Inform*, 2025 WL 1787566, at *7 (D.N.J. Jun. 27, 2025); *Atlas Data Privacy Corp. v. Cole Info. Servs.*, 2025 N.J Super. Unpub. LEXIS 2305, at *15–16 (Law Div. Sept. 19, 2025) (awarding punitive damages for reckless violations and defendant's "persistent failure to act").

**Second**, Defendants have never shown that "a substantial number of the law's applications are unconstitutional." *Moody*, 603 U.S. at 723. Defendants have identified three hypotheticals in which 166.1(c)(1) is arguably unconstitutional because it lacks a mental-state element. Doc. 1-1 at 47 (citing fires, hurricanes, and computer failure). A handful of hypothetical "edge[]" cases cannot justify holding 166.1(c)(1) facially unconstitutional. *Ariz. Att'ys for Crim. Just. v. Mayes*, 127 F.4th 105, 111 (9th Cir. 2025). "In determining whether a law is facially invalid," courts cannot "speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–50 (2008). This Court "cannot speculate whether a law unduly burdens expression without a developed record that explains not only how [each challenger's] platforms work, but also how a wide range of third-party services operate." *Bonta*, 170 F.4th at 760. As discussed below, even in these hypotheticals, 166.1(c)(1) is constitutional.

**Third**, for the same reason, Defendants cannot show the Law's "unconstitutional applications outweigh the constitutional ones." *NetChoice v. Yost*, 180 F.4th 268, 292–93 (6th Cir. 2026); *see Iowa Safe Schs. v. Reynolds*, 172 F.4th 589, 595 (8th Cir. 2026); *Assoc. Builders & Contractors Fla. First Coast Chapter v. Gen. Servs. Admin.*, 174 F.4th 26, 39–40 (11th Cir. 2026); *Mayes*, 127 F.4th at 112.

In response, Defendants rely on pre-*Moody* precedent to argue that "if a law is content-based and fails strict scrutiny, it is facially invalid because it cannot 'be constitutionally applied to anyone.'" Doc. 82 at 7 (quoting *Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir. 2016)). But under *Moody*, courts cannot decide "questions regarding content-neutrality, the requisite level of scrutiny, and governmental interests and tailoring" without first assessing a statute's complete range of applications and which standard of scrutiny (if any) applies given "the First Amendment's varying protections across different activities." *Senate Bill 202*, 160 F.4th at 1177. Defendants have not shown that Daniel's Law "raise[s] the same First Amendment issues in every application to a covered business," let alone as applied to individual persons. *Bonta*, 170 F.4th at 756 (cleaned up). And there is no reason to believe the same standard governs Daniel's Law in all applications.

---

requirement did not permit a challenge to a distinct, inapplicable requirement); *Multimedia Techs., Inc. v. City of Atlanta*, 172 F.4th 1286, 1290 (11th Cir. 2026) (injury under one provision does not confer standing to challenge all provisions). Their challenge must instead rest on the provisions as applied to their own conduct—extended refusals to comply after valid notice.

As Plaintiffs argued, heartland applications of Daniel's Law are governed by *The Florida Star v. B.J.F.*, 491 U.S. 524 (1989), or intermediate scrutiny. Doc. 63 at 17–32 & 32–37; *see also Kratovil v. City of New Brunswick*, 336 A.3d 201, 216–17 (N.J. 2025) (upholding Daniel's Law under *Florida Star*); *Ostergren v. Cuccinelli*, 615 F.3d 263, 276 (4th Cir. 2010) (applying *Florida Star*). Under *Florida Star*, each application must be examined for whether it involves speech on a matter of "public significance," 491 U.S. at 536. That determines whether heightened scrutiny or rational-basis review applies where the inquiry "turns largely on whether that speech is of public or private concern." *Snyder v. Phelps*, 562 U.S. 443, 451 (2011); *see also id.* at 452–53 (citing *San Diego v. Roe,* 543 U.S. 77, 83 (2004) (*per curiam*) (whether speech is of "public concern" is a "threshold inquiry")); *Connick v. Myers*, 461 U.S. 138, 147 (1983). But other applications of the Law may be governed by different standards. Some will involve commercial speech subject (at most) to intermediate scrutiny. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562–63 (1980). Some will involve unprotected speech, *e.g.*, if someone discloses an address in a true threat. *Counterman v. Colorado*, 600 U.S. 66 (2023). For most, if not all, regulated disclosures, addresses or phone numbers are not used as part of the speaker's "substantive message," as required for the Law to qualify as content-based. *Multimedia Techs.*, 172 F.4th at 1291; *see also NetChoice*, 152 F.4th at 1015–16; *Youth 71Five Ministries v. Williams*, 160 F.4th 964, 988 (9th Cir. 2025). Some disclosures may not involve "expressive activity" at all. *Moody*, *supra* at 744.

Finally, Daniel's Law, including 166.1(c)(1), is facially constitutional under any standard. As the New Jersey Supreme Court has held, Daniel's Law is narrowly tailored to "serve a state interest of the highest order by the least restrictive means" even as applied to speech on a matter of public concern. *Kratovil*, 336 A.3d at 217; *see also Yost*, 180 F.4th at 291–93 (upholding parental-consent law under strict scrutiny while rejecting, among other things, argument based on lack of verification requirement). Defendants come nowhere close to showing otherwise.

## II. Section 166.1(c)(1) Does Not Need a Mental-State Requirement.

Defendants assume that "the Law would be unconstitutional if it imposed strict liability." Doc. 1-1 at 44. But neither the Supreme Court nor this Court has ever held that a subjective mental state is an absolute prerequisite to civil liability. The Supreme Court has suggested the First Amendment might prohibit a "negligence *per se* standard" under which "liability follows automatically from publication." *Florida Star*, 491 U.S. at 539.[2] But liability does not "follow[] automatically" from disclosure under 166.1(c)(1). *Id.* 166.1(c)(1) "imposes no liability for publishing [an]

---

[2] In reality, *Florida Star* held only that the lack of a fault requirement was one of three "problem[s]" with the statute. 491 U.S. at 537–40.

individual's address or phone number unless and until an authorized person expressly invokes the protection of Daniel's Law by providing the notice" required under *N.J.S.A.* 56:8-166.1(a)(2). *Kratovil*, 336 A.3d at 217. Ordinarily, this ensures that a defendant had actual or constructive knowledge that continuing disclosure would violate a covered person's rights under the statute.[3]

The First Amendment does not create a categorical bar to strict liability, let alone this notice-based system. As this Court has held, even the "imposition of criminal sanctions on the basis of strict liability" does not violate "the First Amendment" except when doing so "would seriously chill protected speech." *U.S. v. Tyson*, 947 F.3d 139, 147 (3d Cir. 2020) (quotation marks and citation omitted); *see also Yost*, 180 F.4th at 292–93, 313 (upholding statute that "contains no scienter requirement"); *HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 685–86 (9th Cir. 2019) (upholding ordinance that did not require "scienter").

Defendants effectively ask this Court to be the first to hold that the actual-malice standard of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), applies to every speech restriction. But precedent has imposed mental-state requirements in a handful of contexts when necessary to "reduce[] the prospect of chilling fully protected expression." *Counterman*, 600 U.S. at 75. Defendants have yet to explain how imposing damages under 166.1(c)(1) "poses a substantial risk to protected expression" or will chill any protected expression apart from the disclosures it targets. *Tyson*, 947 F.3d at 147. In those applications, Daniel's Law is "narrowly tailored to achieve the state interest of the highest order," so damages are consistent with the First Amendment. *Kratovil*, 336 A.3d at 218. And typically, disclosures regulated by 166.1(c)(1) will not even qualify as "fully protected expression." *Counterman*, 600 U.S. at 76. Such disclosures interfere with "personal privacy," and the Supreme Court has never treated such speech as fully protected. *Florida Star*, 491 U.S. at 530; *see also Snyder*, 562 U.S. at 453.

Any burden imposed on fully protected speech by Daniel's Law is minimal, and even if 166.1(c)(1) "chills some protected speech," "the risk is significantly outweighed by the Government's compelling interest in protecting" the safety and privacy of covered persons. *Tyson*, 947 F.3d at 147–48. The statute "implicates only two categories of information" and does not impose any restriction on disclosing that information "unless and until" a defendant receives a written notification pursuant to Daniel's Law. *Kratovil*, 336 A.3d at 217. Thus, even Defendants' authority agrees that New Jersey's Daniel's Law is consistent with the First Amendment. *See Jackson v. Whitepages, Inc.*, 798 F. Supp. 3d 583, 606 (N.D.W. Va.

[3] All Defendants here received written notice from covered persons including their name and specific home address or telephone number that was sought to be redacted (JA529), and, in most cases, did not comply with the requests until at least several months after the suits were filed.

2025). And although Defendants have suggested they will have to cease disclosing addresses and phone numbers of New Jersey residents entirely because it is impossible to comply within the ten-business-day period, this argument asks this Court to accept on faith that it is impossible for sophisticated technology companies to comply with a nondisclosure request within what equates to 14 calendar days even though other laws use similar compliance periods. *See* Proposed Brief of *Amicus Curiae* Abine, Inc., *supra*. This Court cannot credit Defendants' self-serving speculation in reviewing a ruling on a motion to dismiss.

## III. At Most, this Court Should Hold *N.J.S.A.* 56:8-166.1(c)(1) Invalid in Any Unconstitutional Applications.

At most, this Court should hold 166.1(c)(1) invalid in applications in which plaintiffs fail to also prove "willful or reckless disregard of the law" under *N.J.S.A.* 56:8-166.1(c)(2). Defendants assert that 166.1(c)(1) is unconstitutional where it allows damages without proof of a mental state,[4] but "when confronting a constitutional flaw in a statute," courts should "limit the solution to the problem" by "enjoin[ing] only the unconstitutional applications of [the] statute." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006); *see also Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 129 (3d Cir. 2023) (applying *Ayotte*); *Comm. to Recall Robert Menendez from the Off. of U.S. Senator v. Wells*, 7 A.3d 720, 751 (N.J. 2010) (same).

Alternatively, the New Jersey Supreme Court left open whether to "construe Daniel's Law to avoid constitutional infirmity." Slip. Op. at 40–41 (holding that the "federal court" should decide constitutional avoidance). This Court "must 'presume any narrowing construction or practice to which the law is fairly susceptible.'" *Bruni v. City of Pittsburgh*, 941 F.3d 73, 85 (3d Cir. 2019). New Jersey law adopts saving constructions in similar circumstances. *State v. Carter*, 247 N.J. 488, 515–16 (2021). And if necessary, 166.1(c)(1) "can be excised" under the "presumption of severability." *State v. Higginbotham*, 313 A.3d 847, 859 (N.J. 2024).

Ultimately, there is no reason to hold any provision of Daniel's Law unconstitutional. Defendants have never identified anything more than a handful of hypothetical edge cases in which *N.J.S.A.* 56:8-166.1(c)(1) supposedly gives rise to a constitutional problem. But "[e]ven in the First Amendment context, facial challenges are disfavored, and neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications." *Moody*, 603 U.S. at 744.

---

[4] Defendants assume Daniel's Law is automatically invalid if it does not require the appropriate mental state, but neither *Counterman* nor any other Supreme Court precedent holds that such a provision is facially invalid. *See State v. Labbe*, 314 A.3d 162, 178 (Me. 2023) ("*Counterman* did not hold that [sic]the Colorado stalking statute was facially unconstitutional.").

Dated: August 26, 2026

Respectfully submitted,

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
Julia R. Livingston *(admission forthcoming)*
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone (973) 577-5500
Email(s): rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com
jlivingston@pemlawfirm.com

**BIRD MARELLA RHOW LINCENBERG DROOKS NESSIM LLP**
Ekwan E. Rhow
Elliot C. Harvey Schatmeier
Bill L. Clawges
1875 Century Park East, 23rd Fl
Los Angeles, California 90067
Telephone: (310) 201-2100
Emails: erhow@birdmarella.com
ehs@birdmarella.com
bclawges@birdmarella.com

**BOIES SCHILLER FLEXNER LLP**
Eric M. Palmer
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 377-4250
Email: epalmer@bsfllp.com

Adam Shaw
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao
Julia Bront
44 Montgomery Street, 41st Floor
San Francisco, California 94104
Telephone: (415) 293-6800
Emails: mmao@bsfllp.com
jbront@bsfllp.com

*Attorneys for Plaintiffs-Appellees*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1. This document complies with the page limitation set forth in this Court's Order dated August 12, 2026, which permitted supplemental briefs of no more than five pages, single-spaced. This brief contains 5 pages, excluding signature blocks.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font;

3. Pursuant to Local Appellate Rule 31.1, the text of the electronic Brief and the text of any paper copies to be filed with the Clerk are identical; and

4. The PDF file of this supplemental brief has undergone a virus check using SOCRadar.io, and no virus was detected.

Dated: August 26, 2026

*/s/Eric M. Palmer*
Eric M. Palmer

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on August 26, 2026. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: August 26, 2026

*/s/Eric M. Palmer*
Eric M. Palmer